IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAVE MAGER,<br>on behalf of himself and all others<br>similarly situated, | ) ) ) ) ) | Case No:<br><br>Judge: |
| | ) | **CLASS ACTION COMPLAINT** |
| Plaintiff, | ) | **(Complex Litigation)** |
| | ) | |
| v. | ) | |
| | ) | **DEMAND FOR JURY TRIAL** |
| GNC HOLDINGS, INC. | ) | |
| | ) | |
| Serve: | ) | |
| | ) | |
| National Registered Agents, Inc. | ) | |
| 145 Baker Street | ) | |
| Marion, Ohio 43022 | ) | |
| | ) | |
| WAL-MART STORES, INC. | ) | |
| | ) | |
| Serve: | ) | |
| | ) | |
| CT Corporation System | ) | |
| 1300 East 9th Street | ) | |
| Cleveland, Ohio 44114 | ) | |
| | ) | |
| NBTY, INC. | ) | |
| | ) | |
| Serve: | ) | |
| | ) | |
| CSC Lawyers Incorporation Service | ) | |
| 50 West Broad Street, Suite 1800 | ) | |
| Columbus, Ohio  43215 | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Dave Mager ("Plaintiff") alleges the following on behalf of himself and

all others similarly situated:

## I.     INTRODUCTION

1.     A 2013 Canadian government study estimated that 65,000 dietary supplements are consumed by more than 150 million Americans. The nonprofit American Botanical Council estimated 2013 sales of herbal supplements in the U.S. at $6 billion.

2.     The U.S. Food and Drug Administration requires companies to verify their products are safe and properly labeled. However, dietary supplements are not subjected to the rigorous evaluation process used for drugs. If a manufacturer fails to identify all the ingredients on an herbal product's label, a consumer with allergies or who is taking medication for an unrelated illness could risk serious health issues every time a contaminated herbal supplement is ingested.

3.     Studies conducted by the Centre for Biodiversity Genomics at the University of Guelph and others have previously alerted the dietary supplement industry to the fact that it is not providing the public with authentic products without substitution, contamination or fillers.

4.     Plaintiff brings this action for monetary damages, declaratory and equitable relief, and restitution and/or disgorgement of profits on behalf of himself and all similarly situated individuals ("the Class") who purchased certain adulterated and/or mislabeled herbal dietary supplements (the "Covered Products") produced by NBTY, Inc. that are then marketed for retail sale by GNC Holdings, Inc. and Wal-Mart Stores, Inc. within the state of Ohio.

## II.     PARTIES

5.     Plaintiff is an adult individual residing at 10121 Page Road in the City of Streetsboro, Portage County, Ohio.

6.      Wal-mart Stores, Inc., an Arkansas corporation, is known as America's largest retailer of consumer products.

7.      GNC Holdings, Inc., a Pennsylvania corporation, operates the world's leading nutritional-supplements retail chain devoted to items such as vitamins, supplements, minerals, and dietary products.

8.      NBTY, Inc., a Delaware company, is the largest nutritional supplement manufacturer and distributor in the United States.

### III.     JURISDICTION AND VENUE

9.      This Court has original jurisdiction under Federal Rule of Civil Procedure (F.R.C.P.) 57; 28 U.S.C. §§ 1332, 1367 and 2201. In particular, 28 U.S.C.A. § 1332(d), as amended by the Class Action Fairness Act of 2005, confers jurisdiction in that: (1) this action is a class action in which one or more members of a class of Plaintiff is a citizen of a state different from the defendants; (2) no defendant is a state, state official, or other governmental entity; (3) the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs; and (4) the proposed class contains at least 100 members in the aggregate.

10.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because at least one Defendant conducts business and is subject to the Court's personal jurisdiction within this District and Division, and a substantial part of the events and omissions giving rise to these claims occurred in this District and Division.

### IV.     CHOICE OF LAW

11.      Ohio law governs the claims asserted by Plaintiff on behalf of the Class. Because it seeks to protect the rights and interests of Ohio and other U.S. residents

against companies doing business in the State, Ohio has a greater interest in the claims of Plaintiff and the members of the Class than any other State.

12.     Ohio has the most significant relationship with Plaintiff and the Class and the events and occurrences that form the basis of their claims. Defendants manufacture, market, distribute and/or sell the Covered Products in Ohio for ultimate consumption by its citizens. Plaintiff resides in Portage County, Ohio. He purchased Covered Products in stores operated by GNC Holdings, Inc. and/or Wal-Mart Stores, Inc. within this Court's personal jurisdiction. Thousands of other Ohio residents also purchased Covered Products in this District.

13.     Application of Ohio law with respect to Plaintiff and the Class is neither arbitrary nor fundamentally unfair because Ohio has significant contacts and a significant aggregation of contacts that create a state interest in the claims of the Class.

## V.     FACTUAL ALLEGATIONS

14.     According to the official website of Wal-Mart Stores, Inc.: "Walmart helps people around the world save money and live better -- anytime and anywhere -- in retail stores, online and through their mobile devices." Each week, more than 245 million customers and members visit nearly 11,000 stores under 71 banners in 27 countries and e-commerce websites in 11 countries. With fiscal year 2014 sales of approximately $473 billion, Walmart employs 2.2 million associates worldwide. A number of these stores (including those frequented by Plaintiff) are located in the state of Ohio within this District.

15.     GNC Holdings, Inc. boasts more than 8,500 stores, consisting of some 3,350 company-owned stores in the US, Canada, and Puerto Rico, followed by 3,035 franchised stores in 50-plus countries, and 2,215 store-within-a-store sites in Rite Aid

locations. A number of GNC stores (including those frequented by Plaintiff) are located in the state of Ohio within this District.

16.     NBTY, Inc. employs over 13,000 associates worldwide. In addition to its Long Island corporate headquarters, NBTY boasts numerous manufacturing, packaging, warehouse, distribution and administration facilities throughout the United States and Canada. The company also maintains overseas offices in the United Kingdom, China, the Netherlands, Spain, South Africa and New Zealand.

17.     Upon information and belief, NBTY manufactured the Covered Products for OEM wholesale to GNC Holdings, Inc. and Wal-Mart Stores, Inc., who then relabeled, marketed and distributed the products for retail sale to consumers like Plaintiff in Ohio stores within this District.

18.      In an investigation recently conducted by the New York Attorney General's Office, six popular GNC "Herbal Plus" brand dietary supplement products were purchased at four different New York State locations and were then genetically tested five times per sample, yielding 120 results. The supplements tested included Gingko Biloba, St. John's Wort, Ginseng, Garlic, Echinacea, and Saw Palmetto.

19.     By using established DNA barcoding technology, analytic testing disclosed that 5 out of 6 types of dietary supplement products tested were either unrecognizable or a substance other than what they claimed to be, and therefore constitute contaminated or substituted products. Twenty-two (22) percent of the tests yielded DNA matching the product label; 33% tested for botanical material other than what was on the label; and 45% yielded no plant DNA at all.

20.     Specifically, the Attorney General's testing upon the products purchased revealed the following:

5

**Gingko Biloba.** Negative. No gingko biloba DNA was identified. The only DNA identified was allium (x5), "oryza"(x4)(commonly known as rice), spruce, and asparagaceae. Nine of the tests revealed no plant DNA whatsoever.

**St. John's Wort.** Negative. No St. John's Wort DNA was identified. Of the 20-tests performed, only three identified any DNA, and it included allium, oryza, and dracaena (tropical houseplant).

**Ginseng:** Negative. No ginseng DNA was identified. The testing yielded identification of oryza, dracaena, pinus strobus, wheat/grass, and citrus spp., with 15 of the tests identifying no genetic material at all.

**Garlic:** Positive. All 20 tests yielded DNA from allium.

**Echinacea:** Negative. Five tests identified oryza DNA, one other yielded the DNA of pinus or ranunculacae. Fourteen tests detected no plant DNA of any sort in the product labeled Echinacea.

**Saw Palmetto:** Qualified negative. Only 6 of 20 tests did identify the presence of saw palmetto, but the positive results were principally from one sample. The results did not replicate in the three other samples. One sample demonstrated no plant DNA, another revealed the presence of asparagaceae, and oryza, while a fourth was positive for DNA from the primrose family as well as saw palmetto.

21.     In a parallel investigation, the New York Attorney General's Office also purchased six popular Walmart "Spring Valley" brand dietary supplement products at three different New York State locations and were then genetically tested five times per sample, yielding 90 results. The supplements tested included Gingko Biloba, St. John's Wort, Ginseng, Garlic, Echinacea, and Saw Palmetto.

22.     By using established DNA barcoding technology, analytic testing disclosed that all of the tested dietary supplement products were either unrecognizable or a substance other than what they claimed to be, and therefore fairly constitute contaminated or substituted products. Four (4) percent of the tests yielded DNA matching the product label; 40% tested for botanical material other than what was on the label; and 56% yielded no plant DNA at all.

23.     Specifically, the Attorney General's testing upon the products purchased

revealed the following:

**Gingko Biloba.** Negative. No gingko biloba DNA was identified. The only DNA identified was "oryza" (commonly known as rice) in 6 of the fifteen tests, with other tests identifying dracaena (a tropical houseplant), mustard, wheat, and radish. Four of the tests revealed no plant DNA whatsoever.

**St. John's Wort.** Negative. No St. John's Wort DNA was identified. Of the 15-tests performed, only four identified any DNA, and it included allium, oryza (x2), and cassava (garlic, rice, and a tropical root crop).

**Ginseng:** Negative. No ginseng DNA was identified. The testing yielded identification of oryza, dracaena, pinus strobus, wheat/grass, and citrus spp., with 10 of the tests identifying no genetic material at all.

**Garlic:** Qualified negative. While one of 15 tests did identify the presence of allium, it was clearly not predominate. The other tests identified oryza (x6), and pinus spp. Genetic material of palm, dracaena, wheat, and oryza was located, with only 1/15 of the tests identifying allium as present in the product. Ten of the 15- tests showed no identifiable genetic plant material.

**Echinacea:** Negative. No plant genetic material of any sort was identified in the product labeled Echinacea.

**Saw Palmetto:** Qualified negative. Three of 15 tests did identify the presence of saw palmetto, but it did not predominate. Three tests identified allium DNA, and six other tests identified the presence of oryza. Four tests were unable to identify any botanic DNA in the samples.

24.     In the last four years, Plaintiff has purchased the following Covered Products from a GNC or Wal-Mart store in the Eastern Division of the Northern District of Ohio: Gingko Biloba, Garlic, Echinacea and Saw Palmetto.

25.     At the time of each purchase, Plaintiff relied upon the representations made by Defendants on the product labeling for the Covered Products. Most germane to this litigation are representations that the Covered Products contain the herbal supplements advertised.

26.     Contrary to these material representations, the New York Attorney General's study revealed that the Covered Products lacked most of the herbal

supplements identified on the label. In addition, Defendants failed to disclose certain harmful contaminants found in the same study. Had Plaintiff known about Defendants' product mislabeling and ingredient adulteration, he would not have purchased any of the Covered Products.

## VI.    CLASS ACTION ALLEGATIONS

27.    Plaintiff brings this lawsuit as a class action on behalf of himself and all similarly situated Ohio consumers as members of a proposed Class pursuant to FRCP 23(b)(1),(2) and (3).  The Class is defined as:

> All persons who purchased any Covered Product from a retail store owned, operated or franchised by GNC Holdings, Inc. or Wal-Mart Stores, Inc. in the State of Ohio after March 1, 2011 (the "Class").

28.    The following persons shall be excluded from the Class: (1) GNC Holdings, Inc. and its subsidiaries, affiliates, officers and employees; (2) Wal-Mart Stores, Inc. and its subsidiaries, affiliates, officers and employees; (3) NBTY, Inc. and its subsidiaries, affiliates, officers and employees; (4) all Persons who make a timely election to be excluded from the proposed Class; (5) governmental entities; and (6) the judge(s) to whom this case is assigned and any immediate family members thereof.

29.    In addition, all claims for personal injury, wrongful death and emotional distress are excluded from the Class.

30.    Plaintiff reserves the right to redefine the Class prior to certification.

31.    Based upon the allegations of the Complaint, this action satisfies the ascertainability, numerosity, commonality, typicality, adequacy, predominance, and superiority requirements for class certification.

**Ascertainability and Numerosity**

32.     Although the exact number of Class members is uncertain and can only be ascertained through appropriate discovery, Plaintiff is informed and reasonably believes that the number of injured consumers who qualify for Class membership is in the thousands, such that joinder is impracticable.

33.     The Class is composed of an easily ascertainable, self-identifying set of individuals who purchased a Covered Product from a retail store owned, operated or franchised by GNC Holdings, Inc. or Wal-Mart Stores, Inc. in the State of Ohio on or after March 1, 2011.

**Typicality**

34.     The claims of the representative Plaintiff are typical of the claims of the Class in that, like all Class members, Plaintiff has been damaged by purchasing certain adulterated and/or mislabeled herbal dietary supplements manufactured, marketed, distributed and/or sold by Defendants in Ohio.

35.     The factual bases for Defendants' misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class.

**Predominance of Common Issues**

36.     There are numerous questions of law and fact common to Plaintiff and the Class. The following liability issues predominate over questions affecting individual Class members:

37.     Whether     GNC     Holdings,     Inc.     and/or     Wal-Mart     Stores,     Inc. misrepresented the contents of the Covered Products in their product labeling;

38.     Whether GNC Holdings, Inc. and/or Wal-Mart Stores, Inc. failed to disclose the presence of certain contaminants in the Covered Products' ingredients when they had an affirmative legal duty to disclose them;

39.     Whether GNC Holdings, Inc. and/or Wal-Mart Stores, Inc. represented the Covered Products were of a particular standard, quality or grade which they were not;

40.     Whether NBTY, Inc. supplied the Covered Products to GNC Holdings, Inc. and/or Wal-Mart Stores, Inc. in accordance with certain ingredient representations relied upon by said retailers that were untrue when made;

41.     Whether GNC Holdings, Inc. and/or Wal-Mart Stores, Inc. advertised and/or offered for sale in Ohio any Covered Product that was defective in the manner alleged without clearly and unequivocally indicating the defect and/or with intent not to sell the Covered Product as advertised;

42.     Whether Defendants knew or should have known of the defects in the Covered Products and chose to conceal those facts;

43.     Whether the facts Defendants misrepresented and/or concealed were material;

44.     Whether, as a result of Defendants' misrepresentation and/or concealment of material facts, Plaintiff and the Class acted to their detriment by purchasing the Covered Products;

45.     Whether Plaintiff and the Class suffered a loss as the result of Defendants' misrepresentation and/or concealment of material facts;

46.     Whether Defendants' conduct constitutes a violation of Ohio's Consumer Sales Practices Act;

10

47.     Whether Defendants' conduct constitutes a violation of Ohio's Deceptive Trade Practices Act;

48.     Whether Defendants were unjustly enriched at the expense of Plaintiff and the Class;

49.     Whether Defendants should be declared financially responsible for notifying all Class members of the defects with the Covered Products;

50.     Whether (and to what extent) Plaintiff and the Class are entitled to compensatory, exemplary, and statutory damages; and

51.     Whether Defendants should be ordered to disgorge, for the benefit of the Class, all or part of the ill-gotten profits received from the sale of the defective Covered Products, and/or to make full restitution to Plaintiff and Class members.

**Adequacy**

52.     Plaintiff will fairly and adequately protect the interests of the Class. He has also retained counsel with substantial experience in prosecuting consumer class actions.

53.     Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor counsel has any interests adverse to those of the Class.

54.     Plaintiff and Class members have suffered harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of their controversy. Because litigation costs exceed compensable damages, individual actions are not a viable option.

55.     Absent a class action, Plaintiff and Class members will continue to incur damages and Defendants' misconduct will continue without remedy. Class treatment of

common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation in that Class treatment will conserve the resources of the courts and litigants, and will promote consistency and efficiency of adjudication.

## VII.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### Violation of Consumer Sales Practices Act, O.R.C. § 1345 et seq. ("CSPA")

56. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

57. Defendants are both "persons" and "suppliers" as defined by CSPA §§ 1345.01(B) and (C).

58. Plaintiff and Class members are "consumers" within the meaning of CSPA § 1345.01(D).

59. Plaintiff's purchase of each Covered Product constitutes a "consumer transaction" as defined in CSPA § 1345.01(A).

60. Pursuant to 28 U.S.C. § 2201, Plaintiff seeks a declaratory judgment that Defendants have violated the CSPA's proscription against misrepresenting the characteristics, use, benefit, or quality of goods by affirmatively representing and/or actively concealing to Plaintiff, Class members, and everyone in the chain of distribution (including its broadly disseminated marketing and advertising) that:

(i)     the Covered Products contain a potent and effective quantity of herbal supplements when, in fact, the New York Attorney General's study showed they do not;

(ii)    the Covered Products do not contain the dangerous contaminants identified in the same study.

61.     Defendants' misrepresentation and/or active concealment of the foregoing material facts violates: (a) CSPA § 1345.02(B)(1)'s proscription against representing products have certain performance characteristics, uses, or benefits which they do not have; (b) CSPA § 1345.02(B)(2)'s proscription against representing products are of a particular standard, quality or grade which they are not; and (c) CSPA § 1345.02(B)(5)'s proscription against supplying products in accordance with a previous representation that was untrue when made.

62.     The facts represented and/or concealed by Defendants were material in that a reasonable person would have considered them important in deciding whether or not to purchase the Covered Products.

63.     In violation of the CSPA, Defendants' misrepresentations, concealments and deceptive practices were designed to induce Plaintiff and members of the Class to purchase the Covered Products.

64.     Defendants intended to do the act that was deceptive and/or fraudulent; namely, to manufacture, market, distribute and/or sell adulterated and/or mislabeled herbal dietary supplements in Ohio.

65.     To this day, Defendants continue to violate the CSPA by misrepresenting and/or concealing the defective nature of the Covered Products as alleged herein.

66.     Plaintiff, on behalf of himself and all others similarly situated, also demands judgment against Defendants under the CSPA for injunctive relief in the form of: (i) restitution and/or proportional disgorgement of funds paid to Defendants to purchase the Covered Products, (ii) an injunction requiring Defendants to replace the Covered Products free of charge, and (iii) an award of attorneys' fees.

67.     Plaintiff and the Class are entitled, under CSPA § 1345.09(A), to rescind each sales transaction or to recover their actual economic damages plus an amount not exceeding $5,000 dollars in noneconomic damages per person.

68.     If Plaintiff prevails, he is also entitled to reasonable attorneys' fees under CSPA § 1345.09(F).

**SECOND CLAIM FOR RELIEF**

**Violation of Deceptive Trade Practices Act, O.R.C. § 4165.01 et seq. ("DTPA")**

69.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

70.     Defendants and Plaintiff are all "persons" within the meaning and intent of DTPA § 4165.01(D).

71.     Pursuant to 28 U.S.C. § 2201, Plaintiff seeks a declaratory judgment that Defendants have violated the DTPA's proscription against misrepresenting the characteristics, use, benefit, or quality of goods by affirmatively representing and/or actively concealing to Plaintiff, Class members, and everyone in the chain of distribution (including its broadly disseminated marketing and advertising) that:

(i)     the Covered Products contain a potent and effective quantity of herbal supplements when, in fact, the New York Attorney General's study showed they do not;

(ii)    the Covered Products do not contain the dangerous contaminants identified in the same study.

72.     Defendants' misrepresentation and/or active concealment of the foregoing material facts violates: (a) DTPA § 4165.02(A)(7)'s proscription against representing products have certain performance characteristics, uses, or benefits which

14

they do not have; (b) DTPA § 4165.02(A)(9)'s proscription against representing products are of a particular standard, quality or grade which they are not; and (c) DTPA § 4165.02(A)(11)'s proscription against advertising goods with intent not to sell them as advertised.

73.    The facts represented and/or concealed by Defendants were material in that a reasonable person would have considered them important in deciding whether or not to purchase the Covered Products.

74.    In violation of the DTPA, Defendants' misrepresentations, concealments and deceptive practices were designed to induce Plaintiff and members of the Class to purchase the Covered Products.

75.    Defendants intended to do the act that was deceptive; namely, to manufacture, market, distribute and/or sell adulterated and/or mislabeled herbal dietary supplements in Ohio.

76.    Defendants continue to violate the DTPA by misrepresenting and/or concealing the defective nature of the Covered Products.

77.    Plaintiff, on behalf of himself and all others similarly situated, demands judgment against Defendants under the DTPA for injunctive relief in the form of: (i) restitution and/or proportional disgorgement of funds paid to Defendants to purchase the Covered Products, (ii) an injunction requiring Defendants to replace the Covered Products free of charge, and (iii) an award of attorneys' fees.

78.    Plaintiff and the putative Class are entitled, under DTPA § 4165.03(A), to obtain appropriate injunctive relief and/or to recover their actual economic damages caused by Defendants' deceptive trade practices.

79.     If Plaintiff prevails, he is also entitled to reasonable attorneys' fees under DTPA § 4165.03(B).

## THIRD CLAIM FOR RELIEF

### Unjust Enrichment

80.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint. Pursuant to 28 U.S.C. § 2201, Plaintiff seeks a declaratory judgment as follows:

81.     That Defendants received monies as a result of Plaintiff's and Class members' purchases of the Covered Products, and wrongfully accepted and retained these benefits to the detriment of Plaintiff and Class members.

82.     That Defendants' enrichment at the expense of Plaintiff and Class members was unjust.

83.     That, as a result of Defendants' wrongful conduct, Plaintiff and Class members are entitled to restitution from said conduct and/or the institution of a constructive trust disgorging all profits, benefits, and other compensation obtained by Defendants, plus attorneys' fees, costs, and interest thereon.

## VIII.  RELIEF REQUESTED

Plaintiff, on behalf of himself and all others similarly situated, requests that the Court enter judgment against Defendants as follows:

84.     An order certifying the proposed Class, designating Plaintiff as the named representative, and designating the undersigned as Class Counsel;

85.     A declaratory judgment that Defendants are liable to Plaintiff and the Class for violation of Ohio's Consumer Sales Practices Act, Ohio's Deceptive Trade Practices Act, and for unjust enrichment at common law.

86.     A declaration that Defendants are financially responsible for notifying all Class members of the defects in the Covered Products;

87.     An order enjoining Defendants from further unfair and deceptive advertising, marketing, distribution, and sales practices with respect to the Covered Products;

88.     An award to Plaintiff and the Class of compensatory, exemplary, and statutory treble damages, including interest thereon, in an amount to be proven at trial;

89.     A declaration that Defendants must disgorge, for the benefit of the Class, all or part of the ill-gotten profits received from the sale of the Covered Products, or to make full restitution to Plaintiff and the members of the Class;

90.     An award of attorneys' fees and costs, as allowed by law;

91.     An award of pre- and post-judgment interest, as provided by law;

92.     Leave to amend the Complaint to conform to the evidence;

93.     Such other or further relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

94.     Plaintiff demands a trial by jury of any and all issues in this action so triable.

Respectfully Submitted,


/s/ *George W. Cochran*
George W. Cochran
Supreme Court ID No. 0031691
Law Offices of George W. Cochran
1385 Russell Drive
Streetsboro, Ohio  44241
Telephone:     (330) 626-5600
Facsimile:     (330) 230-6136
Email:          lawchrist@gmail.com
*Attorney for Plaintiff Dave Mager*


17